Rizwan A. Qureshi (*pro hac vice*)
Email: rqureshi@reedsmith.com
REED SMITH LLP
3101 K St. NW
Washington, D.C. 20005
Telephone: +1 202 414 9200
Facsimile: +1 212 414 9299

Jay K. Simmons (*pro hac vice*)
Email: jay.simmons@reedsmith.com
REED SMITH LLP
10 South Wacker Drive
Chicago, IL 60606
Telephone: +1 312 207 1000
Facsimile: +1 312 207 6044

*Attorneys for Applicant*
*Jean-Frédéric Paulsen*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| *In re* Application of Jean-Frédéric Paulsen for an Order Directing Discovery from Namecheap, Inc., Pursuant to 28 U.S.C. § 1782 | Case No.: _____<br><br>**APPLICATION FOR ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

Based upon the annexed Declaration of Rizwan A. Qureshi, Esq. ("Qureshi Decl."), and exhibits attached thereto, Applicant Jean-Frédéric Paulsen ("Mr. Paulsen" or "Applicant") respectfully petitions this Court *ex parte* for an Order pursuant to 28 U.S.C. § 1782, compelling respondent Namecheap, Inc. ("Namecheap," or "Respondent"), a corporation that resides in this District, to provide discovery for use in a proceeding currently pending in the Portuguese Republic.

I.  **INTRODUCTION**

1. Applicant seeks discovery from Respondent in aid of a criminal complaint pending before the Portuguese Public Prosecutor's Office, bearing the caption *Jean-Frédéric*

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Paulsen v. Searchpotential – Unipessoal, Lda & Omar Imad Abdul-Hamid*, which Applicant filed on August 8, 2024 (the "Portuguese Action").

2.  On February 17, 2024, Applicant was the victim of an attempted fraudulent transfer of € 1,500,00.00, from the Paulsen Familae Foundation, a charitable organization, to a now-blacklisted Portuguese bank account bearing International Bank Account ("IBAN EUR") No. PT50003300004572073844405.

3.  The Portuguese Action was filed after unknown actors on February 16, 2024, surreptitiously contacted Applicant using spoofed email addresses[1] registered to the fraudulent domain **paulsen-ge.com**, which were carefully crafted to appear like they belonged to individuals with whom he worked.  Applicant—who does not hold a Portuguese bank account—identified the attempted fraud and was fortunate to halt the funds transfer on February 17, 2024.

4.  Applicant subsequently undertook a substantial investigation to ascertain the identities of the holders of the Portuguese bank account who had attempted to steal the funds from Applicant without his knowledge.  Applicant's diligent investigation has revealed that the immediate beneficiary of the attempted wire fraud was Searchpotential – Unipessoal Lda ("Searchpotential"), a limited liability company registered in Lisbon, and the company's sole owner and ultimate beneficial owner identified in Portuguese business records, is an individual named Omar Imad Abdul-Hamid ("Abdul-Hamid").

5.  In addition to filing a criminal complaint with the Portuguese Public Prosecutor's Office specifically requesting to intervene in the proceedings as a private prosecutor, pursuant to Article 68(1)(a) of the Portuguese Criminal Procedure Code, and seeking to file a claim for civil damages, deferring its submission until an indictment is issued, Applicant's investigation has implicated Namecheap, a web hosting and domain registrar company.

---

[1] As explained by the Federal Bureau of Investigation, "spoofing" entails another individual "disguis[ing] an email address, sender name, phone number, or website URL—often just by changing one letter, symbol, or number—to convince you that you are interacting with a trusted source."  FBI, *Spoofing and Phishing*, available at https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/spoofing-and-phishing (last visited December 20, 2024).

No.: _____                                               – 2 –

6. Specifically, Applicant discovered that the spoofed email addresses registered to the domain paulsen-ge.com are associated with nameserver addresses—*i.e.*, digital infrastructure that directs a domain name to the server that hosts a website—**failed-whois-verification.namecheap.com** and **verify-contact-details.namecheap.com**, for which Namecheap serves as sole registrar. This merits discovery relating to, among other things, Namecheap's contacts with the individuals who registered the fraudulent email domain on its nameserver.

7. Applicant meets all conditions required to obtain discovery under 28 U.S.C. § 1782. *First*, Respondent is present in this judicial district, as it maintains its principal place of business in Phoenix, Arizona. *Second*, Applicant seeks information from Respondent specifically tailored to support his claims in the Portuguese Action. *Third*, because Applicant is a litigant in the Portuguese Action—indeed, he exclusively controlled the targeted account and, as detailed herein, appears to have been specifically targeted by sophisticated cybercriminals—he is certainly an "interested person" for purposes of Section 1782.

8. Moreover, prudential considerations, which the Supreme Court has encouraged district courts to consider when faced with a request for discovery under Section 1782, also favor granting the discovery Applicant seeks. Namecheap is not a party to the Portuguese Action; neither the nature of the Portuguese Action nor the disposition of a court hearing would militate against the use of discovery obtained in the proceeding; Applicant's request is not intended to circumvent any foreign or domestic restrictions on discovery; and the material Applicant seeks consists of readily obtainable business records—indeed, the *exact categories of records a court in this District recently ordered Namecheap to produce in support of a foreign proceeding*—and thus is not unduly burdensome.[2]

9. For these reasons and on the basis of the facts set forth fully herein, Applicant respectfully seeks an order permitting him to take discovery from Respondent, via the Subpoenas attached hereto (*see* **Exhibits A & B**), in support of the Portuguese Action.

---

[2] *See generally In re Reign Digit. Creatives Ltd.*, No. MC-24-00021-PHX-DWL, 2024 U.S. Dist. LEXIS 119567 (D. Ariz. July 8, 2024).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## II. PARTIES

10. Applicant Jean-Frédéric Paulsen is an adult individual and a resident of the Republic of Georgia.

11. Respondent Namecheap, Inc. is a corporation specializing in domain registration and web hosting services based in Phoenix, Arizona.

## III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this Application arises under a law of the United States. Venue is proper in this District under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1782 because the entity from whom discovery is sought is located within this District.

## IV. THE PORTUGUESE ACTION

13. The Portuguese Action that forms the basis for this Application arises from an intentional, concerted effort on part of cybercriminals to infiltrate the email correspondence of Applicant and his most trusted confidants—namely, his lawyer, financial advisor, and executive assistant—to swindle him out of nearly $2 million. Applicant seeks discovery in the United States to aid in the prosecution of flagrantly illegal conduct on part of foreign cybercriminals and has taken every effort to investigate the identities of all individuals involved in order to hold these individuals and their related entities to account for their crimes.

14. Specifically, on February 16, 2024, Applicant received and sent email correspondence that he reasonably believed to involve Eric Turner, his attorney; Jan Liljequist, his financial officer; and Ilona Kenkadze, his personal assistant. The emails involved the contemplated transfer of € 1,500,000.00 between bank accounts controlled by Applicant.

15. Unbeknownst to Applicant, cybercriminals (1) hacked Turner's email address, and further (2) created spoofed email addresses purportedly belonging to Applicant and Kenkadze that are hosted on the domain paulsen-ge.com, for the purpose of hacking Applicant's email correspondence in furtherance of wire fraud.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: _____   – 4 –

16. At 4:26 a.m. on February 16, 2024, a fraudulent email was transmitted from Turner's email address concerning the execution of loan agreements and a separate transfer of € 1,500,000.00 from an account belonging to The Paulsen Familae Foundation to Fernland Holdings Ltd. The email identified Applicant as the intended beneficiary of the funds transfer with a Portuguese bank account bearing IBAN EUR No. PT50003300004572073844405. This email, however, was not written by Turner or anybody else associated with Applicant's business or personal affairs.

17. At 12:19 p.m. on February 16, 2024, a second fraudulent email was transmitted from Turner's email address to Liljequist and Applicant, copying the fraudulent email address **ilona.kenkadze@paulsen-ge.com**, which was made to appear similar to her real email address, Ilona.kenkadze@paulsen.ge. This message again identified Applicant as the intended beneficiary of the funds transfer with a Portuguese bank account bearing IBAN EUR No. PT50003300004572073844405. This email, however, was not written by Turner or anybody else associated with Applicant's business or personal affairs.

18. Between 12:19 p.m. and 1:20 p.m. on February 16, 2024, two additional fraudulent emails were subsequently transmitted from Turner's email address to Liljequist and Applicant. These emails again copied the spoofed email address ilona.kenkadze@paulsen-ge.com and identified Applicant as the intended beneficiary of the funds transfer with a Portuguese bank account bearing IBAN EUR No. PT50003300004572073844405. Again, however, the email was not written by Turner or anybody else associated with Applicant's business or personal affairs.

19. Applicant, still unaware of the fraudulent nature of the emails transmitted from Turner's email account, at 1:26 p.m. on February 16, 2024, sent an email to Turner and Liljequist, and Kenkadze at the spoofed email address copied onto the email chain, requesting that the contemplated transfer be made to his bank account in Georgia, and not to the listed account in Portugal.

20. In response to Applicant's email, at 1:27 p.m. on February 16, 2024, another email was transmitted from Turner's email address to Liljequist and a spoofed email address

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**jean-frederic@paulsen-ge.com**, which was made to appear similar to his real email address, jean-frederic@paulsen.ge, and again copying the spoofed email address ilona.kenkadze@paulsen-ge.com.  Again, this email identified Applicant as the intended beneficiary of the funds transfer with a Portuguese bank account bearing IBAN EUR No. PT50003300004572073844405.

21.   Just three minutes later, at 1:30 p.m. on February 16, 2024, an email was transmitted from the spoofed email address jean-frederic@paulsen-ge.com, to Turner and Liljequist, copying the spoofed email address ilona.kenkadze@paulsen-ge.com.  This message was quickly followed up with two emails, transmitted from Turner's email address to Liljequist and the spoofed email address ilona.kenkadze@paulsen-ge.com.  The first, sent at 1:36 p.m., copied the spoofed email address jean-frederic@paulsen-ge.com.  The second, sent at 4:19 p.m., copied Applicant's real email address, jean-frederic@paulsen.ge.  Both emails again identified Applicant as the intended beneficiary of the funds transfer with a Portuguese bank account bearing IBAN EUR No. PT50003300004572073844405, and the emails were not written by Turner or anybody else associated with Applicant's business or personal affairs.

22.   The following morning, at 6:51 a.m. on February 17, 2024, Liljequist transmitted an email to Turner, copying Applicant's real email address and the spoofed email address ilona.kenkadze@paulsen-ge.com.  Liljequist confirmed that the transfer to the Portuguese bank account had been initiated and would be reflected by February 19.  Applicant subsequently emailed Liljequist, stating that, to his knowledge, he did not have a Portuguese bank account.

23.   Applicant immediately undertook significant measures to investigate the apparent fraudulent activity, including discussions with Turner, Liljequist, and Kenkadze, which revealed the true nature of the malicious email correspondence through the spoofed email addresses registered to the domain **paulsen-ge.com**.  The transfer order was issued, but Applicant was fortunately able to cancel the transfer before it was completed.  Applicant

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: _____   – 6 –

then took immediate steps with a Swiss bank to blacklist the foregoing Portuguese bank account.

24. Applicant's diligent investigation further revealed the identities of the immediate beneficiary of the foregoing Portuguese bank account—Searchpotential Unipessoal, Lda, a Portuguese limited liability company—and the entity's sole shareholder and owner, Omar Imad Abdul-Hamid, a Danish national with an unknown residence in Portugal.

25. Applicant, through counsel, initiated the Portuguese Action on August 8, 2024, through the filing of a criminal complaint with the Public Prosecutor's Office, asserting crimes of attempted aggravated fraud, attempted aggravated computer fraud, computer forgery, and unlawful access, in violation of Articles 217(1), 218(2), 221(1) and (5)(b), and Article 202(b) of the Portuguese Criminal Code, and Article 3(1), 3(3), 6(1), and 6(5) of Portuguese Law No. 109/2009. (*See* **Exhibit C**.)

26. In the Portuguese Action, Applicant has specifically requested to intervene in the proceedings as a private prosecutor, pursuant to Article 68(1)(a) of the Portuguese Criminal Procedure Code, and seeks to file a claim for civil damages, deferring its submission until an indictment is issued, as required by Portuguese law. The criminal proceedings are ongoing, and Applicant continues to diligently investigate the crimes asserted therein.

## V. NAMECHEAP IS DEMONSTRABLY CONNECTED TO CYBERCRIMINALS' ATTEMPTED WIRE FRAUD

27. For the entirety of the events described herein, Namecheap, Inc. has served as the registrar for the domain www.paulsen-ge.com, through Namecheap's nameserver verify-contact-details.Namecheap.com. The registrant associated with the nameserver is identified as "Withheld for Privacy ehf," and all other identifying information has been redacted by Namecheap – purportedly for "privacy" reasons.

28. Applicant in no way is related to or otherwise knows the identities of the criminals who created the fraudulent domain. For this reason, Applicant has no way of obtaining additional details regarding the fraudulent domain hosted on Namecheap's nameserver. This information, however, is readily available in Respondent's business

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

records, as Respondent authorized and—to this day—hosts the fraudulent email domain through which cybercriminals hacked and attempted to defraud Applicant and his associates.

29.  On information and belief, Applicant asserts that Namecheap will not aid Applicant in ascertaining the identities of the individuals or entities who registered this fraudulent domain and used it to perpetrate wire fraud, which currently remain confidential to the public, unless ordered to do so by a United States court.

30.  In the absence of the requested discovery, Applicant will be unable to obtain the relevant information in Respondent's possession and control through civil subpoenas or analogous discovery mechanisms issued by courts outside of the United States. Respondent's website specifically states that it "cannot and will not share customer or account information without [its] customer's express consent *except under limited circumstances when required by law or legal process properly served on Namecheap* or one of [its] affiliates," and "*will not respond to subpoenas, or analogous discovery mechanisms, issued by courts outside of the U.S.* due to the inherent difficulties in validation" of such requests with courts in ex-U.S. jurisdictions.[3]

## VI.  DISCOVERY REQUESTED

31.  Upon information and belief, Respondent is in possession, custody, and/or control of significant documentary information—including emails, text messages, electronic and physical notes, call records, and other documents—that would demonstrate its connections to Searchpotential and Abdul-Hamid, and the efforts of each of the foregoing to hack Applicant's and his associates' email accounts and defraud Applicant to the tune of nearly $2 million.  At minimum, Respondent is in possession of significant documentary information reflecting the *intentional efforts* of the cybercriminals that specifically targeted Applicant for attempted wire fraud to conceal their criminal activities from Applicant and the Portuguese authorities.  Accordingly, Respondent possesses documents and information

---

[3] *See* Namecheap Court Order & Subpoena Policy, available at https://www.Namecheap.com/legal/general/court-order-and-subpoena-policy/ (last visited December 20, 2024) (emphasis added).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

that bear directly upon the issues in the Portuguese Action and which Applicant would be unable to obtain through discovery in the Portuguese Action.

32. As set forth in fuller detail in the subpoenas, Applicant seeks discovery concerning (1) any communications or documents exchanged between Namecheap, on the one hand, and Searchpotential and Abdul-Hamid, and their affiliates, agents and employees, on the other hand, pertaining to the registration of the domain paulsen-ge.com; (2) communications between Namecheap and any third parties regarding the registration of the domain paulsen-ge.com; and (3) other documents and information that are relevant to the claims in the Portuguese Action and are available solely through Respondent.

33. In addition to requests for production of documents from Namecheap, Applicant seeks to depose Namecheap concerning the subject matters described above and in the subpoena *ad testificandum* directed to it.

## VII. APPLICANT IS ENTITLED TO THE DISCOVERY SOUGHT

34. 28 U.S.C. § 1782(a) provides, in pertinent part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the Court.

35. Since 1948, "Congress [has] substantially broadened the scope of assistance federal courts could provide for foreign proceedings," pursuant to § 1782. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247-48 (2004).

36. Courts in this District have repeatedly recognized the liberal policy in favor of granting petitions for judicial assistance under § 1782. *See, e.g.*, *In re the Mun. of Mariana*, No. MC-23-00036-PHX-DJH, 2023 U.S. Dist. LEXIS 162795 (D. Ariz. Sep. 12, 2023) (noting that applicant must satisfy statutory requirements of Section 1782 and the court considers related discretionary factors before granting relief); *In re in re Credit Suisse Virtuoso SICAV-*

*SIF*, No. MC-21-00051-PHX-DWL, 2022 U.S. Dist. LEXIS 77476, at *5 (D. Ariz. Apr. 27, 2022) (noting that *ex parte* petitions under Section 1782 are "typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it" (internal quotation omitted)); *In re Ex parte of Bayerische Motoren Werke AG*, No. MC-22-00016-PHX-SPL, 2022 U.S. Dist. LEXIS 67577 (D. Ariz. Apr. 12, 2022) (same).

37. Moreover, in the very recent past, a court in this District ordered relief pursuant to Section 1782 *against Namecheap*, and did so without hesitation, where the discovery sought was extremely similar in scope to that sought by Applicant for use in prosecuting the Portuguese Action. *See In re Reign Digit. Creatives Ltd.*, No. MC-24-00021-PHX-DWL, 2024 U.S. Dist. LEXIS 119567, at *7–10 (D. Ariz. July 8, 2024) (ordering discovery against Namecheap, Inc., finding that requests for documents and information concerning broadly the allegedly fraudulent transfer of a company's domain by the company's former executive, including information about the domain itself, a support ticket, and three user accounts hosted by the company, finding that the scope of the information requested was not "unduly intrusive or burdensome").

38. The U.S. Court of Appeals for the Ninth Circuit has explained that Section 1782 empowers district courts to authorize discovery where three requirements are satisfied: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (internal citations omitted). A district court should consider a Section 1782 request in the light of the statute's aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts. *Intel*, 542 U.S. at 252.

### A. Applicant Satisfies the Requirements of Section 1782

39. The Court has authority under Section 1782 to grant an application for judicial assistance if the following requirements are met: "(1) the person from whom the discovery is sought 'resides or is found' in the district of the district court where the application is made; (2) the discovery is 'for use in a proceeding in a foreign or international tribunal'; and (3) the application is made by a foreign or international tribunal or 'any interested person.'" *In re Reign Digit. Creatives Ltd.*, 2024 U.S. Dist. LEXIS 119567, at *6 (quoting *Khrapunov*, 931 F.3d at 925). In this case, each prerequisite for this Court to order discovery in aid of the Portuguese Action is easily satisfied.

40. **First**, Namecheap is a resident of Phoenix, Arizona, and therefore resides in this District.

41. **Second**, this request seeks the production of documents from and testimony by Respondent in support of the Portuguese Action. A true and correct copy of the pleadings filed in the Portuguese Action is attached to the Qureshi Declaration as **Exhibit C**, and copies of the proposed subpoenas to be served on Respondent are annexed to the Qureshi Declaration as **Exhibits A & B**. As distilled above, the discovery Applicant seeks is narrowly tailored to obtain information in Namecheap's possession that is necessary to establish the liability of the defendants in the Portuguese Action by evidencing their intentional steps to fraudulently infiltrate Applicant's and his associates' email correspondence, and to identify all of the individuals and entities who perpetrated this malicious campaign to hack Applicant's and his associates' email accounts and deceive Applicant and his associates into authorizing a wire transfer to a Portuguese bank account that does not belong to Applicant.

42. **Third**, Applicant is an "interested person" within the meaning of Section 1782. The Supreme Court has explained that this term of art should be interpreted broadly and includes both litigants as well as other parties who possess a reasonable interest in obtaining judicial assistance. *Intel*, 542 U.S. at 256–57; *see also In re Exparte in re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, 2013 U.S. Dist. LEXIS 169009, at *3 (N.D. Cal. Nov. 21, 2013) (holding that a victim of an allegedly fraudulent transfer of

No.: _____     – 11 –

funds was an interested person under the statute in light of an ongoing criminal proceeding in France and an anticipated criminal investigation into same activity in the United Kingdom); *In re Gianasso*, 2012 U.S. Dist. LEXIS 25763, at *4 (N.D. Cal. Feb. 28, 2012) (concluding that a victim of a crime in Switzerland was an interested person under § 1782, and noting that the phrase encompasses "a complainant to a foreign tribunal" under the Supreme Court's guidance in *Intel* (citing 242 U.S. at 256)).

### B.  The Court Should Exercise its Discretion to Grant the Application

43.  Where the statutory requirements of 28 U.S.C. § 1782 are satisfied, as in this case, the Court is free to grant discovery in its discretion. The Supreme Court has identified a number of factors for district courts to consider when ruling on an application pursuant to Section 1782: (1) the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *In re Reign Digit. Creatives Ltd.*, 2024 U.S. Dist. LEXIS 119567, at *6–7 (quoting *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 571 (9th Cir. 2001)); *see also Intel*, 542 U.S. at 264–65. Each factor weighs in favor of granting the Application.

44.  *First*, where, as here, discovery is sought from a person or entity that is not a party to the foreign proceeding, the need for court-ordered discovery in the United States is apparent. As the Supreme Court has explained: "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in the foreign proceeding may be outside the foreign jurisdiction's reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782 aid." *Intel*, 542 U.S. at 264. Namecheap is not a party to the Portuguese Action, has no

direct legal presence in Portugal, and maintains its principal place of business in this District.[4] In light of Namecheap's stated policy of not responding to subpoenas or analogous discovery mechanisms issued "by courts outside of the U.S." (*see* footnote 3, *supra*), absent relief from this Court, Applicant would be unable to obtain evidence from Namecheap that is critical both to ascertaining of all individuals and entities participating in the fraudulent cyberactivity that forms the heart of Applicant's criminal complaint, and to an ultimate finding of liability on the intentional crimes currently being investigated in that case.

45. **Second**, courts must look to the nature of the foreign proceeding and the receptivity of the foreign tribunal to federal court assistance. Here, there is no indication that the discovery sought in this Application would offend the Portuguese Public Prosecutor's Office in any way. To the contrary, the discovery sought is narrowly tailored to obtain information that is beyond the jurisdiction of such authorities, and—for that very reason— discoverable through Section 1782 to Applicant, a private party harmed by criminal activity being actively investigated in Portugal. Absent any indication that the Portuguese Public Prosecutor's Office would not be receptive to the discovery sought, concerns about the receptivity of the foreign tribunal to the discovery sought are misapplied in this case.

46. **Third**, this Application is not an attempt to circumvent any foreign discovery restrictions and does not violate any Portuguese restrictions on gathering evidence in the course of on ongoing criminal investigation to which Applicant is a complaining witness. As courts in this District have noted, it would be inappropriate, in light of the statutory language, to "engraft a 'quasi-exhaustion requirement' onto [§] 1782 that would force litigants to seek 'information through the foreign or international tribunal' before requesting discovery from the district court.'" *In re Reign Digit. Creatives Ltd.*, 2024 U.S. Dist. LEXIS 119567, at *8–9 (quoting *In re Application of Caratube Int'l Oil Co., LLP*, 730 F. Supp. 2d 101, 107 (D.D.C. 2010)).

---

[4] Namecheap's website states that it maintains two offices in Portugal. *See* Namecheap Careers – Portugal, available at https://www.namecheap.com/careers/portugal/ (last visited December 20, 2024). Although Respondent appears to maintain an interest in a Portuguese subsidiary, Applicant's investigation has uncovered *no evidence* that Respondent has registered any legal presence, or permanent representation, in Portugal.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

47. Applicant in good faith believes that he will be able to use these materials in the Portuguese Action – or else he would not seek to invoke the Court's authority to order the production of materials uniquely located within its jurisdiction that have evident import in ascertaining the identities of those who sought to steal millions of dollars of his money. It is critical to acknowledge that the malicious actors who targeted Applicant and his associates with cybercrimes remain at large, and Applicant has every reason to believe that they are still capable of infiltrating or spoofing his and his associates' email accounts. The very nature of the claims in the Portuguese Action—a complex scheme to unlawfully access at least one confidential email account and meticulously mirror those of Applicant and his close confidants—lay this bare. (*See* **Exhibit C**.) Applicant has every right to get to the bottom of how as-yet unascertained foreign malign actors hacked into his confidential records with a calculated plan to steal his money; and he has every intention of using the information obtained from Respondent to bring these individuals and related entities to justice under Portuguese law. In sum, there is no reasonable basis to conclude that Applicant's request for discovery in aid of the Portuguese Action will "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264–65; *see, e.g.*, *In re Reign Digit. Creatives Ltd.*, 2024 U.S. Dist. LEXIS 119567, at *9 (where there was "no evidence" that petitioner attempted to circumvent foreign tribunal's "control" over proceeding, third discretionary factor supported granting application for discovery into Namecheap's records). Rather, the Court's assistance, by granting the discovery sought herein, would permit Applicant to prosecute the serious crimes asserted in the Portuguese Action.

48. **Fourth**, the document requests annexed hereto are neither unduly burdensome nor intrusive. In *Reign Digital Creatives*, a very recent example, Namecheap took the position that it would not oppose any court-ordered discovery request – which the court noted was consistent with Namecheap's aforementioned policy requiring an order from a U.S. court before it will produce materials in response to a subpoena. 2024 U.S. Dist. LEXIS 119567 at *9 (noting that Namecheap was willing to comply with discovery sought,

"so long as [applicant could] produce an order from a U.S. court"). The court granted the application in straightforward fashion, and the result should be no different in this case. Applicant seeks to obtain practically identical categories of documents and information sought in this prior action, which further demanded a litigation hold requiring the company to halt routine deletion protocols for the relevant domain and user accounts addressed in the application. Applicant has tailored his requests to seek only those materials relevant to the Portuguese Action and believes that these documents are presently available and maintained in the ordinary course of Namecheap's business – which, again, specifically involves hosting domains and related services (*i.e.*, the exact type of information sought in the annexed subpoenas). A sophisticated entity such as Namecheap should have no difficulty identifying these documents, reviewing them, and producing them to Applicant for aid in the Portuguese Action.

### C. A Preservation Order is Appropriate

49. Courts have granted requests made by Section 1782 applicants to place a litigation hold on accounts held by a non-party to the underlying foreign proceeding when the applicant specifically identified the accounts at risk of spoliation. *In re Reign Digit. Creatives Ltd.*, 2024 U.S. Dist. LEXIS 119567 at *9–11 (ordering Namecheap to implement a litigation hold through the pendency of the foreign proceeding preserving all evidence in Namecheap's possession within the scope of the applicant's subpoena, temporarily halting routine deletion protocols for the domain and accounts in question, and locking or otherwise preventing any changes to the domain and accounts); *In re Path Network, Inc.*, 703 F. Supp. 3d 1046, 1075–76 (N.D. Cal. 2023) (ordering Discord to "preserve all accounts it could identify based on the information provided by Applicants, to the extent any exist, until the production of the information subject to the subpoena"). Applicant believes there is a substantial risk that Namecheap or others (*i.e.*, the cybercriminals who specifically targeted him and may know of his attempts to bring them to justice) could seek to modify existing domain and account records to cover up their fraudulent activities. Moreover, documents sought through this Application could be deleted, lost, or otherwise rendered inaccessible (either through routine

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

deletion or otherwise), if they are not subject to a reasonably tailored litigation hold. Applicant therefore requests that this Court order Namecheap to implement a litigation hold designed to (1) preserve all evidence in Namecheap's possession within the scope of Applicant's proposed subpoena; (2) temporarily halt any routine deletion protocols for the domain **paulsen-ge.com** and nameservers **failed-whois-verification.namecheap.com** and **verify-contact-details.namecheap.com**; and (3) lock or otherwise prevent any changes to the domain, nameserver, and any Namecheap user accounts associated with the domain and nameserver.

## VIII. PRAYER FOR RELIEF

For the reasons set forth herein, Applicant respectfully requests that the Court issue the Proposed Order submitted herewith:

A. Granting this Application for discovery from Namecheap, Inc., pursuant to 28 U.S.C. § 1782;

B. Authorizing Applicant to take discovery from Namecheap, Inc., by issuing the subpoenas pursuant to Fed. R. Civ. P. 45, for the production of documents and testimony described in **Exhibit A** and **Exhibit B** (the "Subpoena");

C. Ordering Namecheap to implement a litigation hold:

(1) preserving all evidence in Namecheap's possession within the scope of Applicant's Subpoena;

(2) temporarily halting any routine deletion protocols for the domain **paulsen-ge.com** and nameservers **failed-whois-verification.namecheap.com** and **verify-contact-details.namecheap.com**; and

(3) locking or otherwise preventing any changes to the domain, nameserver, and any Namecheap user accounts associated with the domain or nameserver.

/ / /

/ / /

/ / /

No.: _____   – 16 –

DATED:  December 20, 2024

REED SMITH LLP

By: */s/ Rizwan A. Qureshi*

*Rizwan A. Qureshi (pro hac vice)*
*Attorney for Applicant Jean-Frédéric Paulsen*